1               UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF INDIANA
2                  INDIANAPOLIS DIVISION

3
    UNITED STATES OF AMERICA,    )
4                               ) CAUSE NO.
          Plaintiff,            ) 1:18-cr-00204-JPH-TAB
5                               )
          -vs-                  )
6                               ) Indianapolis, Indiana
    DAKOTA HOLLAND,             ) March 11, 2019
7                               ) 12:30 p.m.
          Defendant.           )
8

9                      **BEFORE THE**
            **HONORABLE JAMES PATRICK HANLON**
10

11          OFFICIAL REPORTER'S TRANSCRIPT OF

12            PLEA AND SENTENCING HEARING

13

14  FOR THE PLAINTIFF:          Pamela S. Domash
                                Assistant United States Attorney
15                              10 West Market Street
                                Suite 2100
16                              Indianapolis, IN  46204

17  FOR THE DEFENDANT:          Michael J. Donahoe
                                Indiana Federal Community
18                                Defenders
                                111 Monument Circle
19                              Suite 3200
                                Indianapolis, IN  46204
20

21
    Court Reporter:    Cathy Easley Jones, RDR, FCRR
22                     Official Court Reporter
                       46 East Ohio Street, Room 290
23                     Indianapolis, IN  46204

24

25          PROCEEDINGS TAKEN BY MACHINE SHORTHAND
                COMPUTER-AIDED TRANSCRIPTION

1      *(In open court)*

2          THE COURT:  Good afternoon.  Please be seated.  We

3  are here this afternoon in the case of United States versus

4  Dakota Holland, Case No. 1:18-cr-204.  We are here this

5  afternoon on the defendant's petition to change his plea.  The

6  United States is represented by Assistant United States

7  Attorney Pam Domash.  Good afternoon.

8          MS. DOMASH:  Good afternoon, Your Honor.

9          THE COURT:  The defendant appears in person.  Good

10 afternoon, sir.

11         THE DEFENDANT:  Good afternoon.

12         THE COURT:  And by his counsel, Mike Donahoe.

13         MR. DONAHOE:  Good afternoon, Your Honor.

14         THE COURT:  The United States Probation Office is

15 represented by Matt Renshaw.

16         MR. RENSHAW:  Good afternoon, Your Honor.

17         THE COURT:  Mr. Donahoe, does your client wish to go

18 forward this afternoon with his petition to change his plea

19 and sentencing thereafter, assuming that his plea is accepted?

20         MR. DONAHOE:  Yes, he does, Your Honor.

21         THE COURT:  Do you have a copy of the indictment,

22 the plea agreement, as well as the presentence investigation

23 report with you?

24         MR. DONAHOE:  Yes, I do.

25         THE COURT:  Were all formal plea offers by the

1  government communicated to your client?

2          MR. DONAHOE:  Yes, they were.

3          THE COURT:  Okay.  If you and your client would

4  approach, please.

5          Good afternoon, sir.  I just want to go through with

6  you before we get under way with what's involved with the

7  hearing on a petition to enter a guilty plea.  I want to give

8  you an overview of what's going to happen.  You'll be put

9  under oath because I need to ask you some questions, which

10  mainly are to ensure that you understand what's happening here

11  and that if you do go forward with your guilty plea, that it

12  would be voluntary.

13          I'm going to go through with you the maximum

14  potential penalties that you face for the charges to which

15  you're going to plead guilty.  I'm going to go through with

16  you certain rights that you have guaranteed under the U.S.

17  Constitution; and I want to be sure you understand that if you

18  go forward with your guilty plea, that you would be waiving

19  those rights.

20          I will talk with you about how your sentence would

21  be determined in this case, and then I'll ask you how you

22  plead.  If your plea is accepted, we'll go right into

23  sentencing.  We'll go through the presentence investigation

24  report.  I will have the opportunity to hear from the

25  government as to what they think would be an appropriate

4

1  sentence in this case.  I'll have the opportunity to hear from

2  your attorney, and you will have the opportunity to address me

3  if you want to.  You don't have to, but that is your right.

4          We will go through the advisory sentencing guideline

5  range.  I know that there have been some objections filed to

6  the presentence investigation report.  There's also an issue

7  or two relating to whether certain parts of the guidelines

8  apply.  We'll go through all that, and then I'll go through

9  the statutory factors that I take into account under 18 United

10  States Code, Section 3553(a); and I will impose your sentence.

11  Any questions about that?

12          THE DEFENDANT:  No, sir.

13          THE COURT:  So I will go ahead and I will place you

14  under oath.  If you would raise your right hand, please.

15  *(The defendant was sworn.)*

16          THE COURT:  What is your full name, sir.

17          THE DEFENDANT:  Dakota Allen Holland.

18          THE COURT:  Where were you born?

19          THE DEFENDANT:  Indianapolis, Indiana.

20          THE COURT:  And how far did you go in school?

21          THE DEFENDANT:  Eighth grade.

22          THE COURT:  Are you able to read and write the

23  English language well enough to understand the plea agreement

24  and the indictment that has the charges against you?

25          THE DEFENDANT:  Yes, sir.

5

1          THE COURT:  In fact, did you read both the

2   indictment and the plea agreement in this case and review

3   those with your counsel?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  And did he answer all of your questions?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Are you currently under the influence of

8   any drug, medication or alcoholic beverage of any kind that

9   might interfere with your ability to understand what is

10   happening here today in court?

11          THE DEFENDANT:  No, Your Honor.

12          THE COURT:  Are there any medications that you

13   ordinarily take that you have not taken that may interfere

14   with your ability to understand what's happening here today in

15   court?

16          THE DEFENDANT:  No, sir.

17          THE COURT:  Are you currently suffering from any

18   physical, mental, or emotional condition that would interfere

19   with your ability to understand what's happening here today in

20   court?

21          THE DEFENDANT:  No, Your Honor.

22          THE COURT:  Is there any reason whatsoever you can

23   think of that you may not be able to understand what's

24   happening here today in court?

25          THE DEFENDANT:  No, sir.

1          THE COURT:  Okay.  If at any time you have any

2   questions during the course of this, you let me know; and

3   we'll stop and I'll be happy to answer any questions, or you

4   can meet in private and talk with your attorney.  Do you

5   understand that?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Are you fully satisfied with the

8   counsel, representation, and advice that you have been given

9   by your attorney in this case?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  And so I'll ask you now, do you want to

12   move forward with changing your plea from not guilty to

13   guilty?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Okay.  I want to ask you a few questions

16   now to make sure that your plea is voluntary.  Has anyone made

17   any promises to you that are not in the plea agreement to get

18   you to plead guilty or to persuade you to accept this

19   agreement?

20          THE DEFENDANT:  No, sir.

21          THE COURT:  Has anybody attempted to force you to

22   plead guilty or threatened you in any way in an attempt to

23   persuade you to accept this agreement?

24          THE DEFENDANT:  No, sir.

25          THE COURT:  Are you pleading guilty of your own free

1 will because, in fact, you are guilty?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Right now, I want to go through with you

4 the constitutional rights that you have guaranteed to be sure

5 you understand what those are and be sure you understand you

6 would be waiving those if your plea is accepted.

7          First, I want to be sure you understand that you

8 have the absolute right to plead not guilty, which you already

9 have earlier in this case, and to persist in that guilty plea.

10 Do you understand that?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  If you were to persist in your plea of

13 not guilty, you would have the right to a speedy and public

14 trial by jury.  Do you understand that?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  If you were to go to trial, you would be

17 presumed innocent; and the government would have to prove your

18 guilt beyond a reasonable doubt.  Do you understand that?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  You would have the right to be

21 represented by and have assistance of counsel for your defense

22 at a trial and every other stage of the proceeding.  If you

23 are not able to afford a lawyer, the Court would appoint one

24 to represent you.  Do you understand that?

25          THE DEFENDANT:  Yes.

1          THE COURT:  You would have the right to use the

2     Court's subpoena power to require the attendance of any

3     witnesses who you wanted to call to testify in your defense.

4     Do you understand that?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  You would also have the right to

7     confront and cross-examine any witnesses called by the

8     government against you.  Do you understand that?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  You would have the absolute right to not

11     incriminate yourself.  That would mean you would not be

12     required to have to testify, and the government would not be

13     able to force you to have to testify.  Do you understand that?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  You would also have no obligation

16     whatsoever to put on any evidence in your own defense; and in

17     fact, if you were to have a trial, I would instruct a jury

18     that they were not allowed to take into account if you were to

19     not testify and not put on any evidence.  I would instruct

20     them that they were not allowed to take that into account in

21     deciding your guilt or your innocence of these charges against

22     you.  Do you understand that?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Okay.  If you went to trial and if you

25     decided -- let's see.  Alternatively, if you went to trial,

1  you could voluntarily choose to testify in your own defense

2  and to put on evidence in your own defense.  Do you understand

3  that?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  Do you understand that if you enter into

6  a plea of guilty and if the plea is accepted by the Court,

7  there will be no trial, no jury; and you will have waived or

8  given up your right to a jury trial, as well as all those

9  other rights that go along with a jury trial?

10           THE DEFENDANT:  Yes, sir.

11           THE COURT:  Okay.  I would like to ask you some

12  questions now about the plea agreement.  I think that your

13  attorney has got a copy of that in front of him.  I would like

14  to begin looking at page 16 of the plea agreement and ask you

15  is that your signature on that page?

16           THE DEFENDANT:  Yes, sir.

17           THE COURT:  Before you signed this, did you have the

18  opportunity to read it and to discuss it in detail with your

19  attorney and have him answer any questions whatsoever you may

20  have had?

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  Does this plea agreement represent in

23  its entirety any understanding, deal, or agreement that you

24  have with the government?

25           THE DEFENDANT:  Yes, sir.

1          THE COURT:  At pages 1 and 2, paragraph 1, the plea

2     identifies the two charges against you that were in the

3     indictment.  You are charged in Count 1 with possession with

4     intent to distribute methamphetamine, in violation of 21

5     United States Code, Section 841(a)(1) and 841(b)(1)(C), and in

6     Count 2, with unlawful possession of a firearm by a prohibited

7     person, in violation of 18 United States Code, Section

8     922(g)(1).  Do you understand that?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  And have you had an opportunity to

11     discuss in detail these charges with your attorney?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  In order to be convicted of these

14     charges, the government would be required to prove certain

15     essential elements beyond a reasonable doubt at trial.  As far

16     as Count 1, possession with intent to distribute

17     methamphetamine, the government would have to prove, first,

18     that you knowingly possessed with intent to distribute

19     methamphetamine; second, that you knew the substance was some

20     kind of a controlled substance; and last, that the mixture or

21     substance contained a detectable amount of methamphetamine.

22          As to Count 2, unlawful possession of a firearm by a

23     prohibited person, the government would have to prove, first,

24     that before May 17th of 2018, you had been convicted of a

25     crime that was punishable by a term of imprisonment of more

1   than one year; second, that on or about May 17th of 2018, that

2   you knowingly possessed a firearm; and last, the firearm you

3   possessed had traveled in interstate commerce prior to your

4   possession.

5           Do you understand that the government would have to

6   prove each and every one of these elements beyond a reasonable

7   doubt at a trial in order for a jury to find you guilty?

8           THE DEFENDANT:  Yes, Your Honor.

9           THE COURT:  If we go to page 2, paragraph 2 of the

10  plea, that sets forth the maximum penalties for the offenses

11  with which you are charged.  For Count 1, imprisonment of up

12  to 20 years, a fine of up to $1 million; and then as far as

13  supervised release goes, in the plea agreement, it says up to

14  three years; but is that a mandatory three-year term,

15  Ms. Domash?

16          MS. DOMASH:  Your Honor, I believe it's -- I'm

17  sorry.  For --

18          THE COURT:  Count 1?

19          MS. DOMASH:  Count 1, I believe it's one to three

20  years.

21          THE COURT:  There's some discrepancy here, and I

22  want to be sure you understand whether the imposition of a

23  term of supervised release is mandatory or if it's something

24  that I have discretion to follow.

25          Mr. Renshaw, do you have --

12

1          MR. RENSHAW:  I'm looking it up right now, Your

2    Honor.

3          THE COURT:  Oh, okay.  The reason I ask is because

4    in the plea agreement, it said no more than three years of

5    supervised release.  I believe in the presentence

6    investigation report, it said a mandatory term of three years.

7          THE DEFENDANT:  Okay.

8          MR. RENSHAW:  Your Honor, the statute reads "a term

9    of supervised release of at least three years."

10          THE COURT:  Okay.  All right.  Thank you.

11          Any objection to that, Ms. Domash?

12          MS. DOMASH:  No, Your Honor.  That's correct.

13          THE COURT:  Mr. Donahoe?

14          MR. DONAHOE:  No, Your Honor.

15          THE COURT:  So I want to be sure you understand,

16    sir, that in addition to the term of imprisonment of up to 20

17    years, the fine of up to $1 million, and it's a mandatory term

18    of three years of supervised release following any term of

19    incarceration.  Do you understand that?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  And for Count 2, the maximum penalties

22    under the statute are imprisonment of up to ten years, a fine

23    of up to $250,000, and a term of supervised release of up to

24    three years.

25          Do you understand that these are the maximum

1    potential penalties that you face if you are convicted of

2    these charges?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  You understand that if you were to

5    violate the conditions of supervised release that would be

6    imposed, that you could be given additional time in prison?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  Do you understand that for each count of

9    conviction, the Court would be required to impose a special

10   assessment of $100?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  You understand that the Court may

13   require you to forfeit certain property?  And, in fact, at

14   paragraph 14, pages 6 through 7 of the plea agreement, there

15   is a forfeiture agreement in there whereby you have agreed to

16   forfeit the firearm and ammunition used in this offense that

17   are described both in the indictment and in the plea

18   agreement; is that correct?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  At pages 8 through 9 at paragraph 15,

21   there is a stipulated factual basis.  In a moment, I'm going

22   to ask you to go back to your table; and I'm going to ask

23   Ms. Domash to approach and read out loud in court that basis

24   and any other facts that she wants to put in the record

25   that'll form the factual basis for your guilty plea.  I'm

1   going to ask you to listen very carefully because when she's

2   done, I'm going to ask you if you heard all that she said; and

3   I'm going to ask you if you agree with everything that she

4   said or if you want to add anything.  Okay?

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  If you would go back now, please, to

7   your table; and I'll invite Ms. Domash up.

8           MS. DOMASH:  Thank you, Your Honor.

9           If taken to trial, the government would present

10  testimony that on May 17th of 2018, in Indianapolis, Marion

11  County, Indiana, in the Southern District of Indiana, the

12  Indianapolis Metropolitan Police Department conducted a

13  traffic stop on a black Pontiac vehicle after observing

14  numerous traffic violations.  This defendant, Dakota Holland,

15  was the front seat passenger in that vehicle.

16          As the stop was being conducted, officers observed

17  this defendant making furtive movements towards the right side

18  of the vehicle next to the passenger door which he was seated

19  next to.  When officers made contact with the vehicle, they

20  detected immediately the smell of marijuana.  The driver was

21  cooperative.  This defendant initially hesitated to provide

22  his name; and while getting this defendant's information,

23  officers observed a black handgun in arm's reach of this

24  defendant in the passenger side door in plain view.  This

25  handgun was located in the same area where officers had

1  earlier observed the defendant making furtive movements and

2  was not immediately accessible to anyone else in the vehicle.

3         This defendant was then immediately detained, and no

4  one else in the vehicle claimed the gun.  The driver stated

5  that it belonged to this defendant, and the other passenger

6  denied any knowledge of the firearm.

7         During the search of this defendant incident to

8  arrest, he told officers he had drugs on his person; and

9  multiple bags were located in his pants pocket, containing

10  approximately 6 grams of a mixture or substance that contained

11  a detectable amount of methamphetamine, as well as $397 United

12  States currency.

13         The firearm was retrieved from the vehicle and was

14  found to be a Smith and Wesson 9-millimeter handgun that had

15  been stolen 10 days prior to this traffic stop.  That firearm

16  was found to have traveled in interstate commerce.

17         The government would present testimony that the

18  amount of methamphetamine present on this defendant's person

19  packaged in multiple bags as well as the currency on his

20  person is consistent with the possession of methamphetamine

21  with the intent to distribute.

22         This defendant is a convicted felon with a prior

23  conviction for robbery in Cause No. 49G06-1207-FB-49355 in

24  Marion County, Indiana in 2012.

25         THE COURT:  Okay.  Thank you.

1          Mr. Holland, if you and your attorney would please

2    reapproach.

3          So did you hear all of those facts that Ms. Domash

4    just read?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Are they all true?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Are they accurate?

9          THE DEFENDANT:  Yes, sir.

10         THE COURT:  Is there anything about them that you

11   would add or that you would change?

12         THE DEFENDANT:  No, sir.

13         THE COURT:  Okay.  The Court finds there is a

14   factual basis sufficient to support a guilty plea.

15         I want to next go over with you how your sentence

16   would be determined in this case.  I would take into account

17   the advisory sentencing guidelines.  I would take into account

18   any possible departures from the guidelines; and then finally,

19   I would take into account certain statutory factors that are

20   set forth in 18 United States Code, Section 3553(a).

21         Do you understand what the sentencing guidelines

22   are?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  And you understand that they are only

25   advisory?

1           THE DEFENDANT:  Yes, sir.

2           THE COURT:  I want to show you now a copy of the

3    sentencing table, which I am holding up; and there should be a

4    copy in front of you or at your table there.  Mr. Donahoe has

5    it.  He's going to show it to you.

6           Have you seen this before?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  And you understand that on the left side

9    under "offense conduct," that as the number gets higher going

10   down, as you have a higher numerical value for your offense

11   conduct, that that results in a higher advisory guidelines

12   range?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  And you also understand that on the top

15   on the horizontal line, that that represents points assigned

16   for your criminal history, and that you could be placed in a

17   category and the more points you have, the higher of a

18   category you are in; and that as well results in a higher

19   advisory sentencing guidelines range.  Do you understand that?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Has Mr. Donahoe explained to you how the

22   advisory guidelines may apply in this case and answered any

23   questions you may have?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  If we look at paragraph 19, page 10 of

1  the plea agreement, there are certain agreements that you had

2  reached, as I understand, with the government about the

3  application of the guidelines in this case; and those

4  agreements were base offense level of 14.  That was for

5  Count 1, and then a base offense level of 20 for Count 2.  Two

6  levels added because the gun was stolen.  So that brings us to

7  a offense level of 22, and then it goes on to explain that the

8  offenses are grouped and that the highest offense is what is

9  used.

10        It goes on in paragraph F to say that the government

11  agrees that you would receive a reduction of two levels based

12  on your acceptance of responsibility and that the government

13  would agree to file a motion pursuant to Section 3E1.1B,

14  requesting that the Court decrease your offense level by one

15  additional level at sentencing.

16        Are those, in fact, all agreements you had made with

17  the government?

18        THE DEFENDANT:  Yes, Your Honor.

19        THE COURT:  Now, I would ask you to look at the

20  presentence investigation report at pages 6 through 7 because

21  you will note that in the presentence investigation report,

22  paragraph 26, that that adds an additional four levels on the

23  basis that you possessed the firearm in connection with

24  another felony offense; and that adds four levels under

25  guideline 2K2.1(b)(6)(B).  Everything else is the same; but

1  the point I want to be sure you understand is that under the

2  plea agreement, it would be an adjusted offense level of 19.

3  Under the guidelines, it's an adjusted offense level of 23.

4  Do you understand that, sir?

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  And I also want to be sure you

7  understand that regardless of what agreement you have with the

8  government in the plea, regardless of what it says in the

9  presentence investigation report, I am the one who ultimately

10  will decide what is the advisory guidelines range.  Do you

11  understand that?

12            THE DEFENDANT:  Yes, Your Honor.

13            THE COURT:  It could be higher or it could be lower

14  than what is in the presentence investigation report.  I also

15  want to ask if you understand that the Court has authority in

16  some circumstances to depart from the advisory guidelines

17  range.

18            THE DEFENDANT:  Yes, Your Honor.

19            THE COURT:  Finally, I want to ask whether you

20  understand that whatever is the advisory guidelines range,

21  that I will also take into account sentencing factors under 18

22  United States Code, Section 3553(a) that may result in a

23  sentence greater or lesser than the advisory guidelines range.

24  Do you understand that?

25            THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Okay.  I want to ask you now about

2   waiver of certain rights that you would have on appeal and to

3   seek other relief.  If you were to go to trial and if you were

4   convicted, you would have the right to appeal both your

5   conviction and your sentence.  An appellate court would then

6   review what happened and see if there were any errors made

7   both at the trial and at sentencing.  Do you understand that?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  You also understand that under some

10  circumstances, you or the government may have the right to

11  appeal a sentence that I impose after a guilty plea?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  If we go to pages 11 to 12, paragraphs

14  20 through 22, of the plea agreement, it identifies some

15  agreements that you have reached with the government that

16  affect your right to appeal or to otherwise contest your

17  conviction and sentence.

18          In paragraph 20, that is entitled, "Direct Appeal."

19  Paragraph 21 is entitled, "Later Legal Challenges"; and

20  paragraph 22 is entitled, "No Appeal of Supervised Release

21  Term and Conditions."

22          So I want to ask you now have you read each one of

23  those paragraphs in full?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  Do you understand what each one of those

1  paragraphs means?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Did you have the opportunity to discuss

4  each one of those paragraphs with your attorney?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Did you have the opportunity to have any

7  questions you may have had about what the paragraphs mean

8  answered?

9          THE DEFENDANT:  Yes, sir.

10         THE COURT:  Do you understand that by pleading

11 guilty, that you will have waived or given up your right to

12 appeal or to otherwise contest your conviction in the

13 circumstances identified in your plea agreement?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  Do you understand that by pleading

16 guilty, that you will have waived your right to appeal or

17 otherwise contest your sentence in the circumstances

18 identified in the plea agreement?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Are you waiving these rights on your own

21 free will and after having discussed the same with your

22 counsel?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  You understand that even if there is an

25 error in sentencing or if you don't agree with the sentence I

1   impose, you might not be able to appeal that?

2               THE DEFENDANT:  Yes, Your Honor.

3               THE COURT:  Do you understand that the offenses to

4   which you are pleading guilty are felony offenses; that if

5   your plea is accepted, that you will be adjudged guilty of

6   those offenses, and that such adjudication may deprive you of

7   valuable civil rights, such as the right to vote, the right to

8   hold a public office, the right to serve on a jury, and the

9   right to possess a firearm of any kind?

10              THE DEFENDANT:  Yes, sir.

11              THE COURT:  We have covered, I think, what are the

12  essential aspects of the plea agreement.  Do either the

13  government or the defense believe there are any other sections

14  of it that should be addressed in greater deal in open court?

15  Ms. Domash?

16              MS. DOMASH:  No, Your Honor.

17              THE COURT:  Mr. Donahoe?

18              MR. DONAHOE:  No, Your Honor.

19              THE COURT:  Mr. Holland, do you understand all the

20  possible consequences of pleading guilty?

21              THE DEFENDANT:  Yes, sir.

22              THE COURT:  Have you got any questions whatsoever?

23              THE DEFENDANT:  No, sir.

24              THE COURT:  Okay.  Then I will ask you as to the

25  charge of possession with intent to distribute

1  methamphetamine, in violation of 21 United States Code,

2  Sections 841(a)(1) and 841(b)(1)(C) as in Count 1 of the

3  indictment, how do you plead?

4          THE DEFENDANT:  Guilty.

5          THE COURT:  As to the charge of unlawful possession

6  of a firearm by a prohibited person, in violation of 18 United

7  States Code, Section 922(g)(1) as set forth in Count 2 of the

8  indictment, how do you plead?

9          THE DEFENDANT:  Guilty.

10          THE COURT:  It is the finding of the court in the

11  case of United States versus Dakota Holland that the defendant

12  is fully competent and is capable of entering an informed

13  plea, that the defendant is aware of the nature of the charges

14  and the consequences of the plea, and that the plea of guilty

15  is a knowing and voluntary plea supported by an independent

16  basis in fact containing each of the essential elements of the

17  offense.  The plea is, therefore, accepted; and the defendant

18  is now adjudged guilty of those offenses.

19          Are you ready, sir, to go into the sentencing phase

20  of this hearing?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Mr. Donahoe?

23          MR. DONAHOE:  Yes, Your Honor.

24          THE COURT:  Ms. Domash?

25          MS. DOMASH:  Yes, Your Honor.

24

1          THE COURT:  So for sentencing, sir, I have reviewed

2   the final presentence investigation report, which also had an

3   addendum and a supplemental addendum.  I've gone through all

4   that information very carefully.  I have also reviewed a

5   sentencing memorandum that was filed by the government, and I

6   have also reviewed a motion that was filed by Mr. Donahoe on

7   your behalf regarding a motion for departure due to mental

8   health issues.  Are there any other filings, letters,

9   materials that the Court should have and take into account at

10  sentencing, Mr. Donahoe?

11         MR. DONAHOE:  No filings, Your Honor; but this

12  morning, my client did hand me a brief one-paragraph letter

13  that his grandmother had written and sent to him instead of to

14  me; and I would read this into the record at the appropriate

15  time.

16         THE COURT:  Okay.

17         MR. DONAHOE:  Now?

18         THE COURT:  Why don't we wait.

19         MR. DONAHOE:  I did disclose this to the government,

20  Your Honor.

21         THE COURT:  Ms. Domash, anything further?

22         MS. DOMASH:  I have no further information.

23         THE COURT:  Okay.  Mr. Holland, have you had the

24  opportunity to read and to discuss the presentence

25  investigation report with your attorney?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Has he answered all of your questions?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Mr. Donahoe, did you have an opportunity

5    to read and to discuss the presentence investigation report

6    with Mr. Holland?

7          MR. DONAHOE:  Yes, Your Honor.

8          THE COURT:  I understand that the government has no

9    objections to the presentence investigation report; is that

10   correct?

11         MS. DOMASH:  That's correct, Your Honor.

12         THE COURT:  As far as the defense goes, I know that

13   there are some objections both to the presentence

14   investigation report facts as well as a request for a

15   departure from the advisory guidelines range that is set forth

16   in the presentence investigation report.

17         Before we get into those, Mr. Donahoe, is it your

18   intention to put on any evidence here this afternoon or make

19   any evidentiary proffers or is the argument going to be based

20   on what the Court already has?

21         MR. DONAHOE:  Neither, Your Honor.  We withdraw our

22   objections to the presentence report.

23         THE COURT:  Okay.  So you're withdrawing the

24   objections, but what about the motion for a departure?  Is

25   that still --

1          MR. DONAHOE:  Yes, Your Honor.  I'm still going to

2    argue that, but I have no additional evidence to present in

3    that regard.

4          THE COURT:  Okay.  The record will reflect that the

5    objections that are indicated in the presentence investigation

6    report, of which there were several in the addendum, objection

7    No. 1 was to paragraph 2.  Objection No. 2 was to paragraph

8    10.  Objection 3 was to paragraphs -- I think, actually, it is

9    paragraphs 44 and 47, what the objection was to there.

10          And so it's my understanding that all of those

11    objections are withdrawn?

12          MR. DONAHOE:  Yes, Your Honor.

13          THE COURT:  Okay.  And reflected in the addendum,

14    there is a notation regarding paragraph 52 and 57 and 65

15    through 73.  Those, as I understand, are not an objection to

16    what's in the report but are going to be the basis for a

17    requested departure; is that correct?

18          MR. DONAHOE:  Yes, it is.

19          THE COURT:  If we go to paragraph 98, pages 18

20    through 21 of the presentence investigation report, we will

21    find in there certain recommended proposed conditions of

22    supervised release, including the reasons why they have been

23    recommended by the probation officer.  Those are at paragraph

24    98, subparagraphs A through T.  So that's on pages 18, 19, 20,

25    and 21.

1          Mr. Holland, have you read all of those proposed

2   conditions of release?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Do you understand them?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Have you reviewed them with your

7   attorney, and has he answered any questions you may have had

8   about them?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  If you would like, I can read each one

11   of the subparagraphs which identify the proposed conditions of

12   supervision.  I can read each one of those in open court; but

13   if you would like, you can waive that.  I don't have to read

14   them.  It's entirely up to you.  Would you like me to read

15   them or not?

16          THE DEFENDANT:  No, that's fine, Your Honor.

17          THE COURT:  So the record will reflect that the

18   Court gave Mr. Holland the opportunity to have the conditions

19   read and that he knowingly waived having those read.

20          I will adopt as my own findings the facts set forth

21   in the presentence report, and I accept the presentence report

22   for the record under seal.  In the event of any appeal,

23   counsel on appeal will have access to the sealed report but

24   not to the recommendation portion, which shall remain

25   confidential.

1          The next step here in the sentencing process is to

2    determine what the advisory sentencing guidelines range will

3    be, and that is set forth in the presentence investigation

4    report.  We've already gone through that when I was asking you

5    about the guidelines.  So I would ask at this time if the

6    government would -- has a motion it would like to make.

7          MS. DOMASH:  Your Honor, the government would move

8    for the third level of acceptance of responsibility to be

9    deducted pursuant to 31.1 [sic].  This defendant has accepted

10   responsibility and signed the plea petition prior to

11   preparations for any trial and saved the government time and

12   resources.

13         THE COURT:  Okay.  Thank you.  That motion is

14   granted.  So that brings your final offense level to 23, which

15   is, in fact, the number that we had talked about earlier.  You

16   were assessed a total of eight criminal history points, which

17   puts new a criminal history Category IV, four points in

18   paragraph 44 for a 2012 conviction of robbery, two counts; two

19   additional points for a 2013 misdemeanor of battery, and then

20   in paragraph 47, two additional points for the fact that this

21   offense was committed while you were on community corrections

22   in another case under Marion County.

23         Is there any objection to that calculation?

24         MR. DONAHOE:  No, Your Honor.

25         THE COURT:  This ultimately is a offense level of 23

1  with a criminal history category of IV, which makes an

2  advisory guidelines range of 70 to 87 months imprisonment; as

3  we already talked about, mandatory at least three years

4  supervised release, a fine range of $20,000 up to $1 million,

5  and a mandatory special assessment of $200.

6          In the motion that was filed Friday, that was a

7  request for a departure; and I think I would like to go ahead

8  and hear argument on that now.

9          Mr. Donahoe, if you would like to go ahead.

10         MR. DONAHOE:  Thank you, Your Honor.  It's been my

11  experience that nothing upsets judges more than having to read

12  about and sentence someone for committing crimes against

13  children.  I think that's true with most people.  I think

14  nothing upsets them more than reading about that, hearing

15  about a crime committed against a child.

16         The presentence report, which I have to commend the

17  Probation Department for, it's maybe the most thorough one

18  that I've seen in terms of really laying out and developing

19  the horrific childhood that my client had and the mental

20  health issues that it's caused him.  It makes it pretty clear

21  that Dakota Holland is that child.

22         He, as you know, never had a father, never knew who

23  his father was.  His mother was using drugs before, during and

24  after her pregnancy with him.  Dakota was taken away from his

25  mother immediately upon birth for testing positive for drugs

1   and remained away from her for quite a while.  He was passed

2   around from relative to relative, and he was put in some

3   situations that were nothing less than horrific and amount to

4   what I would consider to be torture.

5          And it's no wonder that he wound up with a history

6   of mental health issues, beginning at age six, which have

7   stayed with him now for the next 20 years; and it would have

8   been a miracle for someone to emerge from that sort of a

9   background and not wind up in front of a judge on multiple

10  occasions; and unfortunately, that miracle didn't happen here.

11         The presentence report is very thorough in terms of

12  the number of contacts with the mental health system and the

13  number of contacts with the criminal justice system and the

14  mental health system.

15         So I'm not going to reiterate all of that.  I know

16  the Court has read it.  What I did do is go to the guidelines

17  and look to see, well, what should a court do about that, what

18  can a court do about that; and it's fairly clear that when

19  these factors -- the socioeconomic factors, the unstable,

20  dysfunctional, tragic childhood, and then specifically the

21  mental health issues are present to a degree not normally

22  seen, that the Court can consider a departure based on that.

23  And I think there's no question -- I don't think anybody could

24  stand here and argue that they are not present in this case to

25  a degree not normally seen.

1     And the question is what to do about that.  I know
2   that there are two sides to that coin.  You can look at these
3   factors and say, well, this simply makes the likelihood of
4   reoffending higher and why should we believe that anything is
5   going to be different?  There's been intervention in the past.
6   There have been criminal justice sentences and then
7   post-sentencing supervision which didn't work out well.  So
8   why should this Court not give him the maximum sentence just
9   to protect the public for that length of time?

10    But I still hold out a little bit of hope that the
11  Bureau of Prisons can do some good.  I have much more faith in
12  the Federal Bureau of Prisons than I do the Indiana Department
13  of Corrections and the programs and the resources that are
14  available through the federal system.

15    So perhaps this can turn out to be a blessing that
16  Mr. Holland got caught with a gun and that the prosecutors
17  decided to put it in federal court because I think that he
18  will benefit from some programs.

19    I guess the question ultimately is how long is
20  necessary for him to maybe get the maximum amount that he can
21  at this point in time.  I know when I'm done talking, Dakota
22  will address the Court but -- and I hope you don't mind.  I'm
23  kind of rolling my whole presentation here into your question
24  about the request for a departure; but it's all part and
25  parcel of the same thing, Your Honor.

1           THE COURT:  That's fine.

2           MR. DONAHOE:  But I know that Dakota has to do a lot

3   to make sure he doesn't reoffend.  He's got to get an

4   education.  He's got to get mental health counseling.  He

5   probably could benefit from some substance abuse counseling;

6   and he's got to get some vocational training, because when he

7   comes out, if he's not going to get involved with guns and

8   drugs again and some of the other behaviors that have landed

9   him in prison, he's got to be able to make an honest living.

10          So he's had ten months down there in Henderson since

11  his arrest to think about this.  He's been taking GED classes.

12  He's been doing pretty well in those, and he's going to

13  continue to do that.  If he doesn't have that GED by the time

14  the Bureau of Prisons takes him away -- which in my experience

15  these days, it's two or three months after sentencing before

16  people wind up going to the institution -- but if he doesn't

17  have it by then, he will continue to work towards that.  I

18  think the BOP has a rule that you don't get your good time

19  unless you are working towards it or have the GED.  So he's

20  going to be motivated in that regard.

21          I've talked to him about the mental health issues.

22  He wants to peel away the layers of that onion and try to get

23  to the bottom of some of this.  It's no mystery.  You read the

24  presentence report, and you see what went on.  So we know what

25  caused this antisocial behavior; but the big issue is what can

1    be done to put it in its proper place, adjust to, you know,

2    the past being the past, and then move on and not reoffend;

3    and I think he's committed to doing that.

4            There's been another big change in his life since he

5    got arrested ten months ago that can have a pretty big impact

6    on a person and that is he's become a father for the first

7    time now.  His child was born in September.  Obviously, he's

8    never met that child in person or held that child; but

9    Henderson does allow people to visit through screens, Skype

10   and Facetime I guess, things like that.  So he does have

11   weekly visits with the child's mother and the child, and he

12   can see that child; and he's talked to that child's mother

13   about being part of the life of that baby when he gets out.

14           And she has said she's open to that idea, but she

15   wants to see how he does when he gets out.  So I think any of

16   us here that have had children know how that can change

17   someone's life; and I think that provides an additional degree

18   of stability in what has otherwise been an unstable life and

19   motivation, because regardless of what he does, what kind of a

20   job he lands, what kind of economic situation he's in, whether

21   or not he can even afford to pay child support, he knows that

22   that daughter needs a dad who's not in prison, who is not a

23   convict; and I think he wants to be that person.  Obviously,

24   the most important thing is the mental health counseling.

25           And I think the Bureau of Prisons, to their credit,

1   do a good job there.  They certainly have a lot of experience

2   in dealing with people with mental health issues.  They've got

3   a lot of expertise in this area.

4           In terms of placement, my client's request at least

5   initially is Lexington, Kentucky, because it is a medical

6   center; and I think even though they have mental health

7   counseling and classes and sessions at all the institutions, I

8   think Dakota's background reveals someone who needs something

9   a little bit more personal and intensive.  So his request is

10  that he start out at Lexington and be allowed to work with the

11  experts down there to try to get to the bottom of some of his

12  issues.

13          He does have support.  Kay-Lee Shelton, who was with

14  him when he got arrested and is his girlfriend is here in

15  court today with her mother, and they have been supportive

16  throughout this.  Kay-Lee has met with me, talked to me about

17  the circumstances of the arrest and about going forward.

18          Of course, no one can predict, one, how long the

19  sentence is going to be, how long Dakota is going to be away

20  or whether the relationship is going to survive that

21  separation; but the important thing is, she's still here for

22  him right now.

23          I mentioned my client's rather chaotic and

24  dysfunctional upbringing where he never really had a mother

25  either, who is currently homeless.  He did spend some time

1  with his grandmother, who wrote this letter that I mentioned I

2  would read to the Court.  She's mentioned in the presentence

3  report.  It's Mayo Fugate.  It says Dakota Holland's

4  great-great-grandmother.  I don't think she's your

5  great-great-grandmother, is she?

6          THE DEFENDANT:  No.

7          MR. DONAHOE:  Just your mother's mother.  I guess

8  she's talking about what a great grandmother she is.  She

9  says, "This is what I know about Dakota.  He has a good heart,

10  a good, hard worker.  Dakota needs a new start and new

11  associates.  '1 Corinthians 15:33, Bad associations spoil

12  youthful habits.'  I love Dakota and want the best for him.

13  Love always, Mayo."

14          So hopefully, his grandmother will still be with us

15  when he emerges from the Bureau of Prisons; and hopefully, his

16  mother will be there.  She's not here today.  She hasn't been

17  there.  She didn't write a letter.  Nothing has changed

18  apparently since she was pregnant with him and using drugs;

19  but you know, an awful lot of things happened to Dakota as he

20  was coming up.  They were beyond his control; and some mental

21  health issues were developed at that time, and that was beyond

22  his control.

23          He takes responsibility for his actions.  That is

24  within his control, to some extent, and what happens to him in

25  the future is within his control; but I do think that this is

1  a case of such extreme circumstances in the areas that I've

2  discussed that the Court would be certainly justified in

3  departing from this rather high guideline.

4         THE COURT:  Thank you.  Why don't we see if the

5  government wishes to respond specifically to the motion for

6  the request for a departure.  Mr. Holland, I'm going to ask

7  you and Mr. Donahoe to go back to your table.  We'll see if

8  the government wishes to respond to a specific part.

9         MS. DOMASH:  Your Honor, my response will be part of

10  my -- kind of goes into my entire argument.  Do you want me to

11  confine this just to the response for -- or just to address

12  the mental health portion?

13         THE COURT:  Yeah.  I would like to address the

14  motion for the departure first, and then I'll hear again from

15  both of you on recommended overall sentence.

16         MS. DOMASH:  Your Honor, the government's position

17  is that a downward departure is not appropriate in this case.

18  As I said, it sort of reiterates arguments that I'll make in

19  my general argument.  Obviously, the government doesn't

20  dispute the fact that this defendant had a terrible childhood.

21  That is very clear, and it is very clear that he has mental

22  health issues.

23         However, his mental health issues -- I think there's

24  two important things to look at for them and are reasons that

25  the government does not believe that a downward departure is

1   appropriate because of them.

2           One is that he has -- his mental health issues have

3   been both diagnosed and have been attempted to be treated in

4   the past throughout his -- and I'm not entirely certain if

5   it's through his contacts with the criminal justice system,

6   sometime in his juvenile adjudications, or other contacts.

7   Obviously, I'm certain he had multiple contacts with various

8   social workers for placements and other issues throughout his

9   childhood; but we can see that he had mental health and

10  behavioral health issues starting at the age of six and began

11  treatment then throughout his youth.

12          But what is also clear from looking at his criminal

13  history and these reports is despite the fact that he's had

14  treatment and he's had these issues, whatever correlation

15  there is, he continues to engage in criminal conduct; and he

16  continues to engage in violent criminal conduct throughout his

17  life.

18          I would note -- and again, I do think it's -- again,

19  the government is not unsympathetic to the difficulties that

20  his childhood obviously placed on him and that his mental

21  health has; but we note that he's had unsuccessful discharges

22  from treatment facilities throughout his youth and that during

23  one of his treatments, in looking at paragraph 72, they found

24  that the "...defendant's delinquency risks have not been

25  significantly impacted by any level of care.  His response to

1 environment and personal risk factors is very strong and not

2 easily interrupted.  His willingness to participate in

3 antisocial activities is significant.  He struggles with

4 compliance and cooperation with any adult that interferes with

5 his wants and desires.  He is willing to become aggressive and

6 assaultive."  At that time he -- a commitment to IDOC was

7 recommended.

8          So as defense counsel noted, I think when he

9 addressed the Court on his motion, there are two ways to look

10 at his mental health issues and his reactions to that.  One is

11 to do as defense counsel has asked and do a downward variance;

12 and one is the government's position, which is whatever

13 factors his mental health issues play in his criminal

14 behavior, any prior treatment hasn't been successful.  His

15 criminal conduct -- and I'll get into this more later -- has

16 increased; and he has an extensive history of violent

17 behavior.  So the government believes that there is a

18 protection-of-the-public issue.

19          We certainly hope that he gets mental health

20 treatment in the Bureau of Prisons, and we hope that that

21 treatment is successful; but I don't believe a downward

22 variance is appropriate in this case.

23          And I find it -- I always find it difficult to try

24 to compare persons' various mental health issues and various

25 difficult upbringings.  Certainly, there are different levels

1    of severity for mental health problems, different levels of

2    troubles in your childhood and how it impacts you.  Neither of

3    those issues are new to the Court.  They're often brought up.

4           But I think in this case, this isn't a situation

5    where you have a crime that's unusual behavior for this

6    defendant.  This criminal activity isn't his first interaction

7    with the criminal justice system or isn't out of character for

8    him in his past conduct where you could say a mental health

9    issue somehow really caused this behavior and treatment or a

10   departure may be warranted because it's unusual conduct; but

11   unfortunately, it's simply one in a long pattern of behavior,

12   and I don't believe a downward variance would be appropriate.

13          THE COURT:  Okay.  Thank you.

14          So, Mr. Donahoe, would you like to be heard further

15   just on the issue of the motion for the downward variance,

16   because I would like to rule on that and then separately

17   invite Ms. Domash back up to give a presentation of the

18   factors under 3553(a) with her overall recommendation and then

19   give you and Mr. Holland the last word.

20          MR. DONAHOE:  Yes, Your Honor, just briefly.  I'm

21   certainly no expert in the area of mental health or how it

22   should be treated, but it appears to me from everything I have

23   read and in talking with Dakota that he probably needs to be

24   medicated in one form or another.  In the past, he has been.

25          In fact, just recently down in Henderson, they

1  started giving him a new medication about a month ago which he

2  says isn't really working out that well.  What they told him

3  is, "Our facility doesn't allow what you need.  So you're

4  going to have to wait until you get to the Bureau of Prisons,

5  and then the Bureau of Prisons can address it."  So that's

6  fine, I guess.

7         But I do think that because of their expertise in

8  these areas, when he gets to the Bureau of Prisons, hopefully,

9  they will be able to dial in his medical -- or medication

10  regimen and get him on antidepressants, antianxiety

11  medication, and maybe some other things that will hopefully

12  cut down on this antisocial behavior; and then when he gets

13  out, he will know what he needs.  He will have a baseline; and

14  hopefully, under the supervision of the U.S. Probation

15  Department while he's on supervised release, he can continue

16  to receive medical care, psychiatric care, and take that

17  medication.  Thank you.

18         THE COURT:  Okay.  Thank you.  So as far as the

19  request for the departure, which is based on -- Section 5H1.3

20  is the guideline provision cited as the basis for it -- I'm

21  going to deny the request for a departure; but I want to note

22  that unfortunately, many people who come before this court

23  have had very difficult circumstances and suffer from

24  difficult mental and emotional health conditions.  It is

25  extremely unfortunate, I don't doubt in the least -- I feel

1  extremely bad for the circumstances that you've endured,

2  Mr. Holland; but I want to note that the basis for the not

3  departing is that I don't think that it's authorized under

4  these particular facts for the reasons I already said; and

5  even if it were authorized, I would exercise my discretion to

6  not depart.

7       But I want to add that Mr. Donahoe has raised a

8  very, very good point, which is highly, highly relevant to

9  issues -- most importantly to what your ultimate sentence will

10  be because under the 3553(a) factors, even though I haven't

11  granted this as a specific departure, I certainly will take

12  all this into account; and I assure you, I read all of the

13  information in the presentence investigation report, and I

14  think I have a good understanding of all those issues.  It's

15  also highly relevant for the issue of where you will be placed

16  by the BOP.  It is also highly relevant for the conditions of

17  supervised release that may be imposed.

18       So I want to be sure you understand that while the

19  specific request for a departure is not granted, that the

20  issue being raised by your attorney is very well taken and

21  highly relevant in a number of other factors going forward.

22  Okay.

23       So other than what has already been discussed, is

24  there any other objection to the Court's calculation under the

25  advisory guidelines, Ms. Domash?

42

1          MS. DOMASH:  No, Your Honor.

2          THE COURT:  Mr. Donahoe?

3          MR. DONAHOE:  No, Your Honor.

4          THE COURT:  So going forward, I would like to hear

5    from the government first as to the 3553(a) factors and

6    recommended sentence.  Then we'll hear from Mr. Donahoe and

7    Mr. Holland, if he wishes to speak.

8          MS. DOMASH:  Your Honor, looking at the 3553(a)

9    factors, trying to discuss them mostly in order, just looking

10   at section A, the nature and circumstances of the offense,

11   obviously, this is an offense involving possession with the

12   intent to distribute a controlled substance, methamphetamine,

13   and also the possession of a firearm by a felon, which are

14   both very serious offenses; and the statutes treat them as

15   such.

16          Additionally, those are serious offenses; and that

17   combination of possession of drugs with the intent to deal

18   them and possession of a firearm, while not an uncommon

19   combination, is especially dangerous; and there is a major

20   problem in this area as well as the entire nation with drugs

21   and guns and the violence that ensues when those are combined.

22          The history and characteristics of this defendant, I

23   know we've discussed some of the childhood and mental health

24   factors already; but looking at the criminal history and

25   conduct with the criminal justice system, this is a defendant

1  who at 23 years old has had extensive contacts with the

2  criminal justice system.  His first juvenile adjudication was

3  at the age of 13; and I counted a total of seven such juvenile

4  adjudications, almost every single one for what I would

5  consider to be a crime of violence, battery, battery resulting

6  in serious bodily injury, resisting law enforcement, and

7  sexual battery, and some of those with some very disturbing

8  actions by the defendant as well.

9         Then in 2012, as a 16-year old, he committed a

10  felony robbery with a firearm and went to the adult system;

11  convicted as an adult and was sentenced to the Indiana

12  Department of Corrections and was released in 2017, and then,

13  of course, while in community corrections, ended up being

14  revoked.  He was on community corrections while this offense

15  was committed, and he had continuously just left his community

16  corrections and had a warrant pending at the time of this

17  offense.

18         While he was in the Indiana Department of

19  Corrections, he received 26 sanctions and his adult

20  misdemeanor battery conviction.

21         And additionally, I would note that there were two

22  additional sanctions while he's been in Henderson while this

23  case has been pending, one in June of 2018 and one in

24  September of 2018.  So unfortunately, his conduct has just

25  continued to be problematic.

1          He has no education and no real history of

2    employment.  Hopefully defense has stated he's been working

3    towards his GED; and hopefully, he gets that GED, gets

4    education while he's in BOP, uses that time to get some

5    meaningful employment so he can become a productive member of

6    society when he's released; get some mental health treatment.

7          Obviously, it's the best case scenario for the

8    government as well as this defendant if he can behave when he

9    is released.  If he can become a productive member of society,

10   if he can choose to not continue to engage in criminal

11   behavior, that's the best case scenario for absolutely

12   everyone in this courtroom, including the government.

13         Unfortunately, when we're looking at this sentence,

14   what we hope to happen and what based on this defendant has

15   previously done and been able to accomplish in the past are

16   two very different things.

17         And when we look at the factor to reflect the

18   seriousness of the offense, to promote respect for the law,

19   and to provide just punishment, we need to take into

20   consideration the fact that this defendant was on community

21   corrections for a very serious felony offense where he had

22   just been released from the Indiana Department of Corrections;

23   and he continued to have warrants issued for him.  He was

24   given passes, and he just simply chose not to return to where

25   he was supposed to be on community corrections and didn't

1  comply there.

2          I think the seriousness of the offense, respect for

3  the law and just punishment, a guideline sentence is

4  appropriate here.

5          Deterrence to criminal conduct, I think, again, a

6  guideline sentence would be an appropriate sentence to

7  adequate deterrence.

8          Protection of the public is a very important factor

9  for the government in this particular situation based on this

10  defendant's criminal history; and oftentimes, I know the Court

11  wouldn't place a lot of emphasis necessarily on conduct as a

12  juvenile, especially considering the age of the defendant; and

13  the government doesn't always do that as well.

14          If a defendant engages in some violent behavior as a

15  young juvenile, we certainly hope that people grow out of

16  that; but if you look at the pattern of this defendant's

17  behavior throughout the course of his life, it continues to

18  involve batteries, robberies.  Again, the robbery at 16 was a

19  gun offense.  He has a gun again.  Luckily, this offense he's

20  here for today isn't in and of itself a violent offense but he

21  did have a firearm and has a long history of violent behavior.

22          And protection to the public is a significant factor

23  in this case.  Again, we think that mandates a guideline

24  sentence.

25          So given the totality of the circumstances in this

case, I believe that a sentence of 70 months, low end of the

guideline range, as we agreed to recommend in the plea

agreement, is the appropriate sentence.  It's appropriate but

not greater than necessary.  That will give the defendant time

in the Bureau of Prisons hopefully to accomplish education, to

obtain training, to work with mental health professionals,

find a treatment program that helps his behavior problems and

some of his mental health issues.

          And again, it's the hope for the government that

after he completes that sentence and he gets out, that no

one -- he's never in front of another judge again and he can

behave himself; but that's going to be up to him.  But based

on his past behavior and his constant contact with the

criminal justice system, I don't believe that a guideline

sentence is appropriate [sic].  Thank you.

          THE COURT:  Thank you.

          Mr. Donahoe, Mr. Holland.

          Mr. Holland, as I indicated earlier, you don't have

to speak; but if you would like to, you have an opportunity.

I will leave it to you and your attorney as to which order, if

you would like to speak, whether he goes first or if you go

first.

          THE DEFENDANT:  Yes, Your Honor.

          MR. DONAHOE:  I'll kick off, Your Honor.  And just

to remind the Court, that regardless of what sentence is

1   imposed here, Mr. Holland will come out some day; and he will

2   be on supervised release.  He'll be on a pretty short leash, I

3   would imagine; and if he engages in any of the behavior that

4   the government has stressed during its presentation such as

5   not complying with probation, not showing up, like in the past

6   when he walked away from supervision, if he resumes any kind

7   of substance abuse and he's going to fail a test, if he does

8   anything at all like that, picks up a new offense, even if

9   it's a minor misdemeanor, he's going to go back to prison for

10   violating supervised release in increments, depending on how

11   serious the violation is, six months here, 12, 18 maybe.  And

12   that can go on.  There isn't really any real limit to that.

13          So he's going to be under supervision for a long

14   time.  First of all, hopefully, he'll qualify for the BOP's

15   early transition where they take people about six to eight

16   months before their sentence is over and they go to Volunteers

17   of America; and he's got to follow those rules there.

18          If he acts like he did before, he will go right back

19   to the Bureau of Prisons; and then when he comes out, if he

20   violates --

21          So protection of the public, I think, is sort of

22   built into the system after a sentence just as much as it is

23   during a sentence or almost as much.

24          The nature and circumstances of the offense and the

25   history and characteristics of this defendant have been

1    adequately discussed here today.  Of course, the sentence

2    according to 3553 does need to promote respect for the law and

3    provide just punishment and reflect the seriousness of an

4    offense.  I think that a sentence below the guidelines can do

5    that, all of those, just as well as a sentence within the

6    guidelines.

7             One -- actually two concerns the Court has is

8    deterrence.  I say two because we've got general and specific.

9    I'm not much of a believer in general deterrence, particularly

10   in a case like this.  I don't think there are going to be

11   newspaper articles or media coverage where people are really

12   going to learn what happened to Dakota other than his

13   immediate friends and relatives.  They haven't been getting

14   into trouble anyway.

15            But specific deterrence to this defendant is really

16   relevant.  Hopefully, he got the message.  There is no way to

17   predict the future.  I think he is sincere as he stands here,

18   and I think he was sincere when he stood in front of other

19   judges.  But when he got out, as he mentioned in the

20   presentence report, he got a taste of freedom; and he just

21   didn't know what to do with it.  So he took off or he did

22   something stupid.

23            The most important part of 3553 is that section that

24   says the sentence has to reflect the need for the defendant to

25   benefit from educational, vocational, medical, and psychiatric

1  and all the other programs that the Bureau of Prisons has to

2  offer; and I do think that is very, very relevant here, but it

3  can be achieved in something less than 70 months.

4           A sentence below the guidelines would not create an

5  unwarranted disparity because I would submit that other

6  defendants similarly situated, if we can find them, that have

7  backgrounds in psychiatric histories like this -- and it's

8  pretty extreme, so it's hard to find comparable cases; but I

9  would suggest that there would be nothing out of the ordinary

10 for a court to take this into account and to sentence someone

11 below the guidelines.

12          And the final component of 3553 is restitution which

13 is not really relevant here.

14          That's all I have in response to what the government

15 said, and I think the Court -- if the Court's prepared, Dakota

16 is prepared to address the Court.

17          THE COURT:  Yes.  Please.

18          THE DEFENDANT:  How you doing, Your Honor?

19          As we can see, I've made a lot of mistakes in my

20 life; and I've had multiple chances.  I failed at a lot of

21 them chances.  I come here today to accept my responsibility

22 as a man, and I have a daughter that I want to be the father

23 to that I never had.

24          With that being said, I understand what I did was

25 wrong; and I put myself in some situations that now I've got

1  to do this time for.  What I'm going to do during this time

2  and what I've already done, I've completed the 12-step program

3  at Henderson County.  I am enrolled in GED classes.  I want to

4  further my education and get my GED.  I want to take some

5  vocational classes while I'm in BOP, preferably if they have

6  it, welding.

7          I know that my mental issues and some of the things

8  that I have going on mentally need to be addressed, and I'm

9  going to do my best to my ability to take all this stuff

10  that's given to me to rehabilitate myself in that aspect.  I'm

11  going to take all of that, and I'm going to use it to the best

12  of my ability; and all I can say is I hope that the best comes

13  out of this sentence; and regardless of what I'm given today,

14  I'm going to come out better than I came in.

15          THE COURT:  Okay.  Thank you, sir.

16          We're going to take a short recess.

17    *(A recess was taken.)*

18          THE COURT:  Please be seated.

19          Okay.  Mr. Holland, if you and Mr. Donahoe would

20  like to reapproach.

21          We've gone through the advisory guidelines.  We've

22  talked about how those apply to your case.  We've heard the

23  arguments from your counsel and from the government.  I

24  appreciate what you said in your allocution; but I have to

25  talk now about the factors under 3553(a) and the way that I

1  view them, and I want to tell you up front that my goal is to

2  fashion a reasonable sentence.  Under the law, a reasonable

3  sentence is one that's sufficient but not greater than

4  necessary to achieve the goals of sentencing law as set forth

5  by Congress.  So there are certain things that I have to take

6  into account, and I have to balance things in order to do my

7  job.

8         The guidelines are very important.  They are not

9  always exactly right, but they really help to bring fairness

10  and uniformity into the process so that we're going through

11  the same factors with different people; and we want to be sure

12  that there's no unwarranted disparities for people with

13  similar backgrounds who engage in similar offenses.

14         But then we go beyond what the guidelines say

15  because each case is individual and based on an individual;

16  and as I said earlier, Mr. Donahoe did an excellent job of

17  outlining why, based on your personal circumstances, the story

18  of your life, unique to you -- why that makes a difference in

19  the way that this case ought to be viewed.

20         Ms. Domash, obviously, gave an account of your

21  activities in your life and the fact that you've had a very

22  difficult time following the law, which either means that

23  you're unwilling to follow the law or you're unable to.  I

24  don't know which one it is, but you've certainly had a

25  difficult time with that.

1          I have taken into account all the factors set forth

2    in 3553(a) in fashioning an appropriate sentence.  I'm not

3    going to necessarily go through each and every one of them

4    here, but I have taken them all into account.

5          We'll begin with the nature and circumstances of the

6    offense.  I'm not sure we need to say a lot more about it

7    other than this is a very serious offense because it involves

8    the illegal possession of a firearm when you weren't allowed

9    to have one in the first place.  It also involves the

10   possession of methamphetamine with the intent to distribute

11   it.  So it's a very serious offense for the reason Ms. Domash

12   already said.

13         The circumstances of the offense, the fact that it

14   was a stolen gun also make it a very serious offense.

15         We look at your individual history, your

16   characteristics.  As I think I've already said, the

17   presentence investigation report does a very good job of

18   addressing the history of your individual circumstances, the

19   mental, emotional, and behavioral challenges and issues that

20   you have experienced.

21         I will note that I have taken into account on the

22   positive side the facts that you indicated here of what you

23   have been doing since you've been incarcerated, that you have

24   engaged in a 12-step program, the fact that you're making your

25   progress towards a GED.  I take those as good signs; but

1  again, we have to balance all that against your criminal

2  history, and that is pretty troubling.

3         Your history includes violent crimes for which you

4  were not assessed any points, so I point that out.  You do

5  have only one adult conviction, but it's a very serious one;

6  and it's for robbery and for two counts of it.

7         We also know that that sort of led to a whole host

8  of other problems that you had, the conviction for a very

9  serious violent offense that led to your being in DOC; and as

10 mentioned in the pre-sentence investigative report, you got

11 into a lot of trouble there, it appears.  On 26 separate

12 times, you were sanctioned.  I want to point out that the

13 exact number doesn't matter, and I'm not going through and

14 making factual findings as to each and every one of those as

15 to whether they happened or not because what matters is that

16 the fact that any of that occurred falls into the pattern that

17 we've talked about of your unwillingness to follow the rules

18 and the laws.

19        You violated your terms of corrections when you were

20 out; and then, of course, you also have this battery

21 conviction as well.

22        So I've thought about all of those things and

23 additional things when it comes to your individual history,

24 your individual circumstances; but then I also have to go well

25 beyond that, and I need to think about things that don't only

1 affect you, that aren't only based on you.  I need to impose a

2 sentence that will promote respect for the law.  I need to

3 impose a sentence that will give just punishment.  I need to

4 impose a sentence, very importantly, that will protect the

5 public; and that is a very important factor that I've spent a

6 lot of time thinking about here, in addition to your own

7 upbringing and your background.

8           Ms. Domash had indicated, going through all of these

9 factors, that you have a history of aggressive behavior,

10 violence, inability to restrain yourself; but I also note that

11 I do think that a lot of this, if not most -- we won't ever

12 know exactly how much, but a substantial part of your problems

13 go back to these -- the conditions that are talked about in

14 the pre-sentence investigative report.

15          It seems very obvious that you need treatment, and I

16 hope that you're willing to engage in the treatment when it's

17 offered because it sure sounds as though that's going to be

18 your best, if not your only, chance of success.

19          I've considered the need to avoid unwarranted

20 sentencing disparities.  Again, that's a thing.  So when

21 individuals are sentenced, whether it's by me or other courts,

22 what I want to think about and I want to look at the sentences

23 so that there's some approximate or rough sense of fairness

24 and proportionality among individuals with similar backgrounds

25 who have done similar things.  So that is my goal.

1      In light of all those facts and all those

2  circumstances, I find that a sentence of 60 months of

3  incarceration is a reasonable sentence.  I find that that is

4  sufficient but not greater than necessary in this case.

5      I'm going to impose with that a term of three years

6  of supervised release on Count 1, which I have to; and I'm

7  going to impose a term of two years of supervised release on

8  Count 2, and I'm going to order those to run consecutively so

9  that you will be on supervised release for five years.  And

10  the reason I'm doing that is because I found it very

11  persuasive what Mr. Donahoe said; and again, it goes back to

12  the fact that you need help.  You need treatment, and I think

13  that being on supervised release for five years is going to

14  help in that regard.

15      I'm going to depart downward on the fine.  Is there

16  any objection to a departure on the fine?

17      MS. DOMASH:  No, Your Honor.

18      THE COURT:  I am going to impose a fine, however, of

19  $500; and the reason why I'm going to impose that, while I

20  know you don't have the ability to pay that fine right now, is

21  I think it is appropriate.  I think it will help to facilitate

22  your ability to engage in prison industries and to encourage

23  you to pursue vocational training, which you indicated you

24  wanted to because once you get out, you've got to have a job.

25  You have this baby now.  You've got to take care of her.  If

1  you're going to have any chance whatsoever, you have to learn

2  how to work.

3        I'm going to order forfeiture of the gun and the

4  ammunition that are described in the indictment.  There will

5  be a mandatory special assessment of $200, $100 for each

6  count.

7        I'm going to note that as I think is obvious but

8  that irrespective of my finding as to the requested departure

9  under the guidelines, that the sentence that I am imposing is

10 being done under my discretion under 3553(a) and that I would

11 impose the same sentence even if I had found in favor of that

12 downward departure I think.

13       So with all that being said, is there any legal

14 objection to the sentence that I've outlined, Ms. Domash?

15       MS. DOMASH:  No, Your Honor.

16       THE COURT:  Mr. Donahoe?

17       MR. DONAHOE:  No, Your Honor.

18       THE COURT:  Okay.  The sentence will include

19 recommendation that you are placed at Lexington where you can

20 receive appropriate mental health counseling and treatment.

21 That is only a recommendation.  That is up to the BOP.  It

22 will also include the recommendation that you are able to

23 participate in the course work you need to get your GED and to

24 engage in vocational training as well.

25       With all that being said, I'm going to now announce

1  the sentence.

2          Pursuant to the Sentencing Reform Act of 1984, it is

3  the judgment of the Court that the defendant, Dakota Holland,

4  is hereby committed to the custody of the Bureau of Prisons to

5  be imprisoned for a term of 60 months on each of Counts 1 and

6  2, to be served concurrently.  He shall pay a fine of $500 for

7  the reasons already stated.

8          He shall forfeit one Smith and Wesson 9-millimeter

9  handgun bearing serial No. HXY0586 and all the ammunition

10 located within it.

11         Supervised release, as I said, is going to be

12 imposed three years on Count 1, two years on Count 2, to run

13 consecutively, for a total of five years.

14         While on supervised release, the defendant shall not

15 commit another federal, state, or local crime, shall cooperate

16 with the collection of a DNA sample, shall refrain from any

17 unlawful use of a controlled substance, and shall submit to

18 one drug test within 15 days of placement on supervised

19 release and at least two periodic tests thereafter as directed

20 by the probation officer.  The defendant shall comply with the

21 additional conditions of supervised release that we already

22 talked about earlier in this hearing that the defendant

23 waived, having read.

24         It is further ordered the defendant will pay a

25 special assessment of $100 per count, for a total of $200.

1  That payment is due immediately, to be made directly to the

2  clerk of the U.S. District Court.

3          So at this time, I want to advise you of your appeal

4  rights.  You may appeal your conviction if you believe that

5  your guilty plea was somehow unlawful or involuntary or if

6  there is some other fundamental problem in the proceedings

7  that was not waived by your guilty plea.  Do you understand

8  that?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Normally, you would have a right to

11  appeal your sentence; but you have entered into a plea

12  agreement which waives some or all of your rights to appeal

13  the sentence itself.  Waivers like this are generally

14  enforceable; but if you believe that the waiver itself is not

15  valid, you may present that theory to the appellate court.  Do

16  you understand that?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Any Notice of Appeal must be filed

19  within 14 days of the entry of judgment.  If you cannot afford

20  to pay a lawyer to appeal for you, the Court will appoint a

21  lawyer to represent you on appeal.  If you cannot afford to

22  pay the filing fee, you may ask permission to file your Notice

23  of Appeal without having to pay the fee.  Also upon request,

24  the Clerk of the Court will prepare and file a Notice of

25  Appeal.

1          Do you have any questions at all about your

2     appellate rights, your appellate waiver, or the time limits

3     for filing Notice of Appeal?

4          THE DEFENDANT:  No, Your Honor.

5          THE COURT:  Anything further on behalf of the

6     government?

7          MS. DOMASH:  No, Your Honor.

8          THE COURT:  The defense?

9          MR. DONAHOE:  No, thank you, Your Honor.

10         THE COURT:  Sir, I want to end things by again

11    letting you know that I did go below what the guidelines

12    require.  I did that for the reasons I've already stated, but

13    I did impose the five years of supervised release, which is a

14    long period of time; and I think that doing that in

15    conjunction with your 60 months' incarceration is sufficient

16    to keep the public safe.  That is a factor that I was very,

17    very worried about in fashioning the sentence.

18         I can tell you that if you violate the conditions

19    when you're out, you will come right back here in front of me.

20    I will assume if you engage in further bad conduct that you

21    will be charged again as well.

22         So I certainly, certainly hope that you're able to

23    get the treatment that you need.  I hope you're able to make

24    the most of your time in BOP, and I wish you luck; and you are

25    now remanded to the custody of the U.S. Marshal.

1          COURTROOM DEPUTY:  All rise.

2          Court is adjourned.

3          *(The proceedings were adjourned at 2:15 p.m.)*

1                    CERTIFICATE OF COURT REPORTER

2

3        I, Cathy Jones, hereby certify that the foregoing is a

4   true and correct transcript from reported proceedings in the

5   above-entitled matter.

6

7

8     /s/ Cathy Jones                      August 24, 2020
    _____
9     CATHY JONES, RDR, FCRR
      Official Court Reporter
10    Southern District of Indiana
      Indianapolis Division
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25